J-A10037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KHALID M. HARTH | : | |
| | : | |
| Appellant | : | No. 683 EDA 2017 |

Appeal from the Judgment of Sentence February 3, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002122-2015

BEFORE: GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.E.: **FILED OCTOBER 16, 2019**

Appellant, Khalid M. Harth, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial conviction for robbery, burglary, conspiracy to commit robbery, and conspiracy to commit burglary.[1] For the following reasons, we vacate the February 3, 2017 judgment of sentence as well as the amended judgment of sentence imposed on February 17, 2017, and remand for further proceedings.

The relevant facts and procedural history of this appeal are as follows. On January 11, 2015, a group of individuals, including Appellant and co-defendant, Darren Brown, participated in a home invasion and armed robbery of several victims. The Commonwealth filed a complaint against Appellant

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3502(a)(1), and 903, respectively.

and co-defendant on January 22, 2015. On February 24, 2015, a grand jury indicted Appellant on multiple counts of, *inter alia*, robbery, burglary, conspiracy to commit robbery, and conspiracy to commit burglary, stemming from the January 11th incident.

On April 7, 2015, the court conducted a scheduling conference, ordered the Commonwealth to pass discovery by June 22, 2015, and scheduled trial for September 28, 2015. The relevant docket entry for the April 7th scheduling conference provides, in part: "Defense needs videos, FBI extract, 2010 videos, discovery for DC-14-15-05913 and color photos[.] Commonwealth has no medical records. List for status of discovery on 6/22/15." (Criminal Docket at 7, unpaginated). The docket entry for June 22, 2015, reads in relevant part as follows: "Commonwealth not ready—IGJ discovery is not ready to be passed today. List for status on 7/28/15. … Jury trial on 9/28/15."[2] (***Id.***). On July 28, 2015, the Commonwealth requested a continuance to pass discovery, which the court granted. A July 28, 2015 docket entry titled "Order Granting Motion for Continuance" states, in relevant part: "Commonwealth request—Commonwealth to pass IGJ discovery by 7/30/15." (***Id.***). On July 30, 2015, the court rescheduled trial for December 14, 2015, in light of the Pope's visit to Philadelphia in September 2015. The relevant docket entry provides, in part: "09/24/15 date blocked, POPE'S VISIT. Had to give this

_____

[2] "IGJ" stands for "indicting grand jury."

new date." (*Id.* at 8, unpaginated).

On August 21, 2015, the court rescheduled trial for January 11, 2016. There is no explanation in the record for the continuance. An August 21, 2015 docket entry titled "Order Granting Motion for Continuance" states, however, in relevant part: "IGJ discovery to be passed. … Jury trial on 1/11/16." (*Id.* at 9, unpaginated). On December 29, 2015, the court entered an order rescheduling trial for January 25, 2016. Again, there is no explanation in the record for this continuance. Co-defendant's counsel, however, was on trial in an unrelated matter on January 25, 2016, and the Commonwealth refused to sever the case. Also on January 25, 2016, the court rescheduled trial for May 23, 2016. The relevant docket entry, tilted "Commonwealth Refuses to Sever—Codefendant Unable to Proceed" provides, in part, as follows: "Defense attorney on co-defendant case is on [t]rial in Delaware County. … List for 3-day [j]ury [t]rial—5/23/16[.]" (*Id.* at 11, unpaginated).

On May 23, 2016, the scheduled trial date, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. In his Rule 600 motion, Appellant asserted the Commonwealth had not exercised due diligence as it had failed to turn over discovery, which remained outstanding as of May 23, 2016. Meanwhile, on May 23 and 24, 2016, the court continued trial, because the court was sitting on an unrelated trial. Each day, the court set the next court date for the subsequent day, May 24 and May 25, 2016, respectively. Docket entries for May 23 and 24, 2016, indicate additional discovery remained

outstanding.  On May 25, 2016, the court remained on another trial.  That same day, the court set a Rule 600 hearing for June 2, 2016, and noted it would reschedule trial following the hearing.  A docket entry for May 25, 2016, states: "Audio discovery passed at the bar of the [c]ourt."  (*Id.* at 12-13, unpaginated).

On June 2, 2016, the court rescheduled trial for November 28, 2016, and conducted a Rule 600 hearing.  During the Rule 600 hearing, Appellant asserted that throughout the case the Commonwealth had failed to pass discovery, including voluminous police records defense counsel had only recently learned existed after counsel happened to have a conversation with a detective in the courthouse.  The Commonwealth offered no explanation for its failure to turn over discovery and instead claimed Appellant had not requested the outstanding discovery.  (N.T. Rule 600 Hearing, 6/2/16, at 3-8).

On June 22, 2016, the court denied Appellant's Rule 600 motion on the record.  The court stated its conclusion, as follows:

> [THE COURT]:               … The period from when the first complaint was filed on or about January 22, 2015, and the current date is a total of approximately 516 or [5]17 days and subtracting—or roughly speaking 369 days of excusable or extendable time, there are a total of 147 days attributable to the Commonwealth, more or less, and this is within the limit of 365 days, and **[Appellant] has not shown that the Commonwealth did not exercise due diligence, and therefore the motion to dismiss is denied.**

(N.T. Rule 600 Disposition Hearing, 6/22/16, at 6) (emphasis added).  When

- 4 -

Appellant subsequently asked the court for clarification regarding the impact

of the Commonwealth's failure to turn over discovery, the following exchange

took place:

>[DEFENSE COUNSEL]: Thank you, Your Honor. Just for the record, so it's my understanding that…that you are considering the fact that the [c]ourt was on trial and not considering the fact that discovery was not complete?
>
>[THE COURT]: Well, it doesn't matter to me. If the [c]ourt's on trial, the [c]ourt's on trial. I can't hold that against the Commonwealth. That's considered extendable time.
>
>[DEFENSE COUNSEL]: Right, but discovery wasn't complete, and you're saying that that's not included?
>
>[THE COURT]: Well, I took it into consideration, but like I said, what's just as dispositive to me is the fact that I—I'm not going to get into—locked into a response. I'm taking that into consideration, the fact that I couldn't have done the case if I wanted to. So, that's a big factor I'm looking at.
>
>* * *
>
>[THE COURT]: Said differently, even if discovery were complete and the [c]ourt were not able to do the case, that would not have been held against the Commonwealth, right? Do you agree?
>
>[DEFENSE COUNSEL]: If discovery had been complete and—yes—and the [c]ourt was on trial, that's excusable time.
>
>[THE COURT]: Right, extendable.

(*Id.* at 6-8).

The parties proceeded to trial on November 28, 2016, and the

Commonwealth passed to Appellant 15 intended trial exhibits, which the

defense claimed it had not previously received.[3] As a result, Appellant made

an oral motion to dismiss pursuant to Rule 600. The court and parties briefly

discussed on the record the outstanding discovery, in part, as follows:

> [DEFENSE COUNSEL]: And I understand that this was not the [prosecutor] that was previously assigned. It was Marcus Washington up till April 16 of 2015, when he left their office.
>
> [THE COURT]: Okay.
>
> [DEFENSE COUNSEL]: However, here's—the issue is due diligence. They've had this in their pos[session] since the beginning of this case, which was in January of 2015.
>
> [THE COURT]: Did you have it in your possession since then, [c]ounsel? Or do you know?
>
> [COMMONWEALTH]: I don't know.
>
> [THE COURT]: All right.
>
> [COMMONWEALTH]: I had to review the file with the detective where I had him e-mail me some things. So, I don't know what—what was in—what necessarily should have been passed or not complete, to be completely candid with Your Honor.
>
> I know that Mr. Washington sent a letter to both attorneys stating that, you know, this is the discovery that will be passed. Any further requests need to be handled by—by an IGJ judge.
>
> [DEFENSE COUNSEL]: Right.
>
> And if I may just respond to that, Judge. That's always the case. But that means that's all the discovery they're going

_____

[3] Also on November 28, 2016, co-defendant entered a guilty plea to robbery, conspiracy to commit robbery, and VUFA offenses. Thus, co-defendant did not proceed to trial with Appellant.

to use at trial.

[THE COURT]:                    Right.

* * *

[DEFENSE COUNSEL]:       … And now I'm in court, and I have—I mean, that is not an insignificant amount of discovery that I'm seeing the morning I'm supposed to pick a jury on this case.

(N.T. Jury Trial, 11/28/16, at 12-13).     When the court asked the Commonwealth if it planned to use at trial most of the 15 exhibits at issue, the Commonwealth responded that it did not plan to use 10 of the exhibits. Subsequently, the following exchange took place:

[DEFENSE COUNSEL]:       And Your Honor, that doesn't excuse that maybe I would need to use these exhibits at trial.

* * *

[THE COURT]:                    All right.   But that's a separate issue from whether or not—if he's saying he can proceed without it and is willing to do it—

[DEFENSE COUNSEL]:       Judge, that's not due diligence.

[THE COURT]:                    —that certainly does address some of your concerns.   It's up to you whether or not you want to use it or not.

[DEFENSE COUNSEL]:       No.   It doesn't remedy it, Your Honor.

[THE COURT]:                    It does remedy it to some degree.

* * *

[THE COURT]:                    … It has less relevance if

they're not using it.

(**Id.** at 16-17). The trial court then announced it would take the Rule 600 motion under advisement so the parties could conduct *voir dire* that day. When the court asked if the Commonwealth had a final response to Appellant's Rule 600 motion, the Commonwealth responded: "I mean, Your Honor, frankly, you already denied the motion. There hasn't been a change of circumstance. The last continuance was not on the Commonwealth. So, it was denied." (**Id.** at 24). The Commonwealth, however, offered no explanation for why it had failed throughout the case to turn over discovery or why it had failed to pass to Appellant the 15 exhibits at issue prior to November 28, 2016.

On November 29, 2016, the next day, the court denied Appellant's second Rule 600 motion on the record, and explained its rationale in part as follows:

> [THE COURT]: …
>
> … Although the [c]ourt realizes that the defense didn't have the discovery information on or about May of 2016, the continuances from then until today were due to the—due to the [c]ourt hearing the [Rule] 600(A) motion filed on May 23, 2016, and also because of a [c]ourt continuance up until the current time. So, all that time really should be extendable time. Even if I wanted to do the matter, I wasn't in a position to do it back then because of the other matters. So, obviously, that time should not be attributable to the— to the Commonwealth.
>
> The period from when the first complaint was filed on January 22, 2015, to the current date of November 2[9], 2016, is a total of approximately 676 days. Subtracting the

529 days of excusable or extendable time, there are a total of 147 days attributable to the Commonwealth, and this is within the time limit of 365 days, **and [Appellant] has not shown that the Commonwealth did not exercise due diligence.** And therefore the motion to dismiss is denied.

\* \* \*

[THE COURT]: …I'm incorporating by reference some of the findings that I stated previously. I already gave findings prior to today's hearing.

\* \* \*

[THE COURT]: The [c]ourt continued the matter, and its extendable time. All right?

**So, even if the Commonwealth isn't ready, I'm not going to hold the Commonwealth responsible if I'm doing other matters.** …

(N.T. Trial, 11/29/16, at 22-24) (emphasis added).

The parties then completed jury selection and proceeded with trial, during which the jury heard testimony from two Victims and several police officers who investigated the January 11, 2015 incident. The trial court summarized the trial evidence, in relevant part, as follows:

[Victim 1] testified that he went to the 2200 block of 7th Street and Jackson Street on January 11, 2015, to visit three friends for dinner between 6:00 p.m. and 7:00 p.m. After a brief stay within the apartment, [Victim 1] said he left to get some items from his car parked on the corner of 7th Street and Jackson Street approximately 30 feet from the apartment building's entrance. As he was returning to the apartment entrance, one of the home invaders placed a gun at his neck. Although [Victim 1] did not get a clear look at the assailant, he described the individual as wearing a mask that covered his entire face except for the eyes. The man led [Victim 1] to the third floor apartment where his friends resided.

According to [Victim 1], as they ascended the stairs, the man used a cell phone to communicate with his cohorts. [Victim 1] then heard two or three individuals running up the stairs behind them. Once inside the apartment, the gunman instructed [Victim 1] to go to the kitchen, place his hands on the wall, and not look behind him. The gunman kept his weapon on [Victim 1] and instructed [Victim 1]'s friends ([Victim 4] and [Victim 5]) to remain seated at the kitchen table—"otherwise they would get shot." Other men then entered the apartment and took…[V]ictims' cell phones.[10]

[10] … The victims were [Victim 1], [Victim 2], [Victim 3], [Victim 4], [Victim 5], and an unidentified woman.

[Victim 1] further testified that he overheard the gunman instruct a cohort to search one of the other [V]ictims' car[s] for cash. Meanwhile, [Victim 1] heard "somebody trying to get out of the house." Another [V]ictim was taken outside. The gunman then forced [Victim 1] down the apartment stairs after the other home invaders had left. When the gunman shoved [Victim 1], [Victim 1] did not look back out of fear for his safety. However, [Victim 1] later told a friend what had occurred.

[Victim 2] testified he was in his apartment at 2227 South 7th Street with a friend ([Victim 3])[13] on January 11, 2015, when three masked men entered his room. [Victim 2] testified that one of the men pointed a gun at them, while the other two demanded money from [Victim 2]. [Victim 2] gave them $130.00. The men also took [Victim 2]'s cell phone from his bed, demanded more money, and forced him to lay down with his face to the floor. The gunman then forced [Victim 3] to give them money. One of the men subsequently struck [Victim 3] in the head with an object.

[13] [Victim 3]…was unavailable to testify during the trial as he was out of the country at the time.

When there was silence, [Victim 2] saw three intruders, [Victim 3], and [Victims 1, 4, and 5] standing in the hallway. [Victim 2] then locked the door, jumped out of the bedroom window to the second floor landing, and borrowed a tenant's

phone to call 9-1-1. He remained in the tenant's apartment until the police arrived. When [Victim 2] left the building, he saw [Victim 3] being treated in an ambulance for head injuries.

Police Officer Chanta Ung testified that [Victim 3] told him during his January 11, 2015 investigation that the intruders demanded $25,000. [Victim 3] also confirmed that one of the intruders struck him in the head and dragged him to his silver Toyota Avalon. Although [Victim 3] later escaped, the intruders took his car keys.

Police Officer Mark Davis testified he stopped a silver Infiniti I30 with the license plate number JPY3440 at approximately 7:00 p.m. on January 21, 2015. The occupants of the vehicle included [co-defendant], …Appellant, and Zyfir Dorsey. Davis also testified that he recovered a holstered [handgun] beneath the driver's seat.

Detective Mark McAndrews testified that he was assigned to the case on January 12, 2015. McAndrews testified that he, Detective Spadaccini, and Detective Eric Johnson canvassed the area at 2333 South 7th Street for surveillance video on January 12 and 13 of January 2015. The detectives retrieved surveillance videos from three locations. However, most of the surveillance depicting the incident was retrieved from Mekong Video located at 2218 South 7th Street. The detective watched this video to determine what type of vehicle the perpetrators were driving when they fled the scene of the incident. After consulting with Major Crimes Auto Squad, McAndrews believed the car was most likely a silver, four-door 2001 or 2003 Infiniti with a moon roof.

McAndrews later testified that he was travelling westbound on the Schuylkill Expressway in his personal vehicle on January 16, 2015, when he observed a silver I30 Infiniti resembling the vehicle used by the home invaders. McAndrews took a picture of the vehicle's tags with his cell phone and relayed it to Detective Vega. McAndrews and Vega then reviewed the footage from Mekong Video and concluded that the car used by the home invaders on January 11, 2015, was the same car McAndrews observed on the Expressway. McAndrews also learned that the

vehicle had recently been stopped by the police in South Philadelphia on December 15, 2014, and on January 5, 2015. On these dates, [co-defendant] was the driver and…Appellant was a passenger.

McAndrews later instructed Officer Mark Davis and Officer Joe Caruso to investigate whether the I30 Infiniti was involved in the January 11, 2015 robbery. On January 21, 2015, Davis and Caruso informed McAndrews that they had stopped the vehicle. At the time, there were several occupants (including…Appellant) in the vehicle.

On January 22, 2015, McAndrews showed…Appellant the video after reading his Miranda rights. While watching the video, …Appellant identified [co-defendant] and himself as two of three individuals who were exiting the Infiniti at 2218 South 7th Street around 8:00 p.m. on the night of the robbery. The video showed…Appellant extending his head out of the rear driver-side door and looking southbound on 7th Street. It also showed…Appellant exiting the vehicle, walking around the corner and onto Tree Street, and returning to the car. It further showed…Appellant stepping out of the car (arguably as a "lookout") before getting back in the vehicle when the home invaders exited the apartment with [Victim 3]. Lastly, it showed [co-defendant] driving down Tree Street after the intruders returned to the Infiniti.

On January 23, 2015, Detectives McAndrews and Spadaccini searched the silver 2001 I30 Infiniti and recovered: [handgun ammunition], [co-defendant]'s wallet, a key fob to a Toyota automobile, and a set of house keys. McAndrews testified that the keys were the same ones taken from [Victim 3] on the night of the robbery. McAndrews further testified that a search warrant was executed at…Appellant's residence on January 22, 2015. When executing the warrant, the police recovered from…Appellant's bedroom one…handgun[ and ammunition]. Ammunition recovered from…Appellant's residence also matched the ammunition and handgun recovered from the silver I30 Infiniti stopped on January 21, 2015.

Detective McAndrews later testified that [co-defendant]'s and…Appellant's cell phones were searched on or about

- 12 -

January 27, 2015, and January 29, 2015. According to McAndrews, photos recovered from the cell phones showed…Appellant and [co-defendant] posing with various firearms. According to McAndrews, one of the firearms resembled the…handgun recovered from…Appellant's residence. Another firearm matched the…handgun recovered from the I30 Infiniti.

* * *

(Trial Court Opinion, filed December 31, 2017, at 3-8) (internal citations to record and most internal footnotes omitted). On December 2, 2016, the jury convicted Appellant of three counts each of robbery and burglary, and one count each of conspiracy to commit robbery and conspiracy to commit burglary.

The court conducted a sentencing hearing on February 3, 2017. During the hearing, the Commonwealth requested restitution in the amount of $2,000.00, in light of the value of the property Appellant stole from Victim 3. Victim 3, however, did not testify at trial and was unavailable to testify at the February 3rd sentencing hearing. At the conclusion of the hearing, the court sentenced Appellant to an aggregate term of eight (8) to sixteen (16) years' incarceration, plus six (6) years' probation, and restitution in the nominal amount of $10.00. By agreement of the parties, the court imposed restitution in a nominal amount at sentencing and scheduled a second restitution hearing for February 17, 2017, to hear Victim 3's testimony and amend the amount of restitution. Appellant filed a timely notice of appeal on February 13, 2017.

On February 17, 2017, the court conducted a restitution hearing.

Following the hearing, the court entered an amended sentencing order, increasing the amount of restitution to $1,500.00; Appellant's incarceration and probationary terms remained the same. The court ordered Appellant on March 27, 2017, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). On April 7, 2017, Appellant filed a motion for extension of time to file a concise statement. Appellant filed on August 22, 2017, a Rule 1925(b) statement and contemporaneous application to file the Rule 1925(b) statement *nunc pro tunc*. On September 8, 2017, the court granted Appellant's petition to file his concise statement *nunc pro tunc*.

On August 15, 2018, Appellant filed in this Court an application to remand so that Appellant could have an opportunity to amend his Rule 1925(b) statement *nunc pro tunc* to include a claim regarding jury instructions. This Court denied Appellant's application on September 17, 2018, without prejudice to Appellant to raise it again before the assigned merits panel.

Appellant raises three issues for our review:

> DID NOT THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN DENYING THE MOTION TO DISMISS PURSUANT TO PA.R.CRIM.P. 600(A)?
>
> WAS NOT THE EVIDENCE INSUFFICIENT FOR CONVICTION ON ALL CHARGES HERE, AS THERE WAS NO EVIDENCE OF [APPELLANT] BEING THE DOER OR ACCOMPLICE OF ANY ROBBERY OR BURGLARY NOR ANY EVIDENCE OF A CONSPIRATORIAL AGREEMENT OR OF [APPELLANT]'S INTENT TO AID THE DOERS?
>
> DID NOT THE TRIAL COURT ERR AND ABUSE ITS

> DISCRETION IN DENYING DEFENSE COUNSEL'S REQUESTED JURY INSTRUCTION, WHICH CLARIFIED THAT [APPELLANT] COULD NOT BE FOUND GUILTY OF THE SUBSTANTIVE CRIMES AT ISSUE UNDER A CONSPIRATORIAL THEORY OF LIABILITY?

(Appellant's Brief at 5).

As a prefatory matter, in criminal proceedings, an order of restitution is a sentence (even when imposed as a condition of probation); it is not an award of damages. *Commonwealth v. Mariani*, 869 A.2d 484, 486 (Pa.Super. 2005). Issues concerning a court's statutory authority to impose restitution implicate the legality of the sentence, which we can review *sua sponte*. *Commonwealth v. Deshong*, 850 A.2d 712, 713 (Pa.Super. 2004) (stating timeliness of court's imposition of restitution concerns legality of sentence). *See also Commonwealth v. Oree*, 911 A.2d 169, 172 (Pa.Super. 2006), *appeal denied*, 591 Pa. 699, 918 A.2d 744 (2007) (maintaining legality of sentence claims cannot be waived, given proper jurisdiction, and Superior Court can review illegal sentences *sua sponte*). "Issues relating to the legality of a sentence are questions of law…." *Commonwealth v. Diamond*, 945 A.2d 252, 256 (Pa.Super. 2008), *appeal denied*, 598 Pa. 755, 955 A.2d 356 (2008). When the legality of a sentence is at issue, our "standard of review over such questions is *de novo* and our scope of review is plenary." *Id.* "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated…." *Commonwealth v. Pombo*, 26 A.3d 1155, 1157 (Pa.Super. 2011) (quoting

- 15 -

*Commonwealth v. Bowers*, 25 A.3d 349, 352 (Pa.Super. 2011), *appeal denied*, 616 Pa. 666, 51 A.3d 837 (2012)).

The Crimes Code governs the imposition of restitution as follows:

## § 1106. Restitution for injuries to person or property

**(a) General rule.—**Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

\* \* \*

**(c) Mandatory restitution.—**

(1) The court shall order full restitution:

\* \* \*

(2) **At the time of sentencing the court shall specify the amount and method of restitution.** In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

\* \* \*

(3) The court may, **at any time** or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, alter or amend any order of restitution made pursuant to paragraph (2),

- 16 -

provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

(4)(i) It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

\* \* \*

18 Pa.C.S.A. § 1106(a), (c)(1), (c)(2)(i), (c)(3)-(4)(i) (emphasis added).

Section 1106(c)(2) includes "the requirement that if restitution is ordered, the amount must be **determined at the time of sentencing**...." **Commonwealth v. Dinoia**, 801 A.2d 1254, 1257 (Pa.Super. 2002) (emphasis in original).

It also placed upon the Commonwealth the requirement that it provide the court with its recommendation of the restitution amount at or prior to the time of sentencing. Although the statute provides for amendment or modification of restitution "at any time," 18 Pa.C.S.A. § 1106(c)(3), the modification refers to an order "made pursuant to paragraph (2)...." Thus, the statute mandates an initial determination of the amount of restitution at sentencing. This provides the defendant with certainty as to his sentence, and at the same time allows for subsequent modification, if necessary.

**Id.** (internal citations and footnote omitted).

Generally, a court "may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, **if no appeal from such order has been taken** or allowed." 42 Pa.C.S.A. § 5505

(emphasis added). In the context of a restitution order, however, a trial court is divested of jurisdiction to modify the amount of restitution after the defendant has filed a timely notice of appeal from the judgment of sentence. *Commonwealth v. Weathers*, 95 A.3d 908, 912 (Pa.Super. 2014), *appeal denied*, 630 Pa. 736, 106 A.3d 726 (2015). The *Weathers* court reasoned:

> Despite the "at any time" language of section 1106(c)(3), we are compelled to conclude that in this case the trial court did not have jurisdiction to modify the order of restitution due to Appellant's timely filing of a notice of appeal. [I]t is well established that "questions of jurisdiction may be raised *sua sponte*." *See Commonwealth v. Coolbaugh*, 770 A.2d 788, 791 (Pa.Super. 2001) (internal citation omitted). After the trial court denied Appellant's post-sentence motion, Appellant filed a timely notice of appeal…. At that point, the trial court no longer had jurisdiction to proceed in this matter. *See* Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter."); *Commonwealth v. Ledoux*, 768 A.2d 1124, 1125 (Pa.Super. 2001) ("Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal."). Nevertheless, the trial court entered an order amending the amount of restitution [after Appellant had timely filed a notice of appeal]. Despite the flexibility granted to the court to amend orders of restitution under section 1106(c)(3), here the court could not modify the order of restitution during a period when it did not have jurisdiction over the case.
>
> … [W]e must vacate the court's…order amending the amount of restitution. Under section 1106(c)(3), the trial court may subsequently amend the order of restitution when it regains jurisdiction, following the conclusion of this appeal, provided that the court states its reasons for doing so as a matter of record.

*Weathers, supra* at 912-13 (internal footnotes and some citations omitted).

Here, the trial court imposed restitution in the amount of $10.00 when it sentenced Appellant on February 3, 2017, and amended the amount of restitution on February 17, 2017, following a restitution hearing. Appellant's timely filed February 13, 2017 notice of appeal, however, deprived the trial court of jurisdiction to modify restitution after February 13, 2017. **See id.** Therefore, we vacate the February 17, 2017 amended sentencing order, without prejudice to the Commonwealth to seek modification and the trial court to modify the order of restitution in compliance with Section 1106(c)(3) upon restoration of jurisdiction in the trial court. **See id.**

As a second prefatory matter, issues not raised in a Rule 1925(b) concise statement of errors will be deemed waived. **Commonwealth v. Castillo**, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting **Commonwealth v. Lord**, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998)). "Rule 1925(b) waivers may be raised by the appellate court *sua sponte*." **Commonwealth v. Hill**, 609 Pa. 410, 427, 16 A.3d 484, 494 (2011). The Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." **Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007).

Instantly, Appellant failed to raise in his Rule 1925(b) statement any issue regarding the trial court's jury instructions. Accordingly, Appellant's third issue is waived for purposes of appellate review. **See Castillo, supra**.

In his first issue, Appellant argues his speedy trial rights were violated, because trial commenced over a year after the Commonwealth filed its criminal complaint. Appellant contends the trial court incorrectly calculated the number of days that constitute excusable time. Appellant avers the Commonwealth's delay in turning over discovery was not excusable. Appellant submits discovery was outstanding in May 2016, as of a scheduled trial date, and again November 2016, immediately before trial commenced. Appellant concludes the trial court should vacate his convictions and judgment of sentence and discharge him. We agree some relief is due.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." ***Commonwealth v. Hunt***, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005).

> **The proper scope of review...is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court.** An appellate court must view the facts in the light most favorable to the prevailing party.
>
> > Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith

> prosecution delayed through no fault of the Commonwealth.
>
> * * *
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Id.* at 1238-39 (internal citations and quotation marks omitted) (emphasis added).

Rule 600 provides, in pertinent part:

**Rule 600.  Prompt Trial**

(A)   Commencement of Trial; Time for Trial

* * *

(2)     Trial shall commence within the following time periods.

> (a)   Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(2)(a).  "Rule 600 generally requires the Commonwealth to bring a defendant…to trial within 365 days of the date the complaint was filed."  *Hunt, supra* at 1240.  To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief.  *Id.* at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600."  *Commonwealth v. McNear*, 852 A.2d 401, 406 (Pa.Super. 2004).

It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Id.*

In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

"Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

***Hunt, supra*** at 1241 (internal citations and footnote omitted). ***See also Commonwealth v. Burno***, 638 Pa. 264, 313-14, 154 A.3d 764, 793-94 (2017) (explaining excusable delay is not calculated against Commonwealth in Rule 600 analysis, as long as Commonwealth acted with due diligence at all relevant times).

Rule 600 requires the trial court to determine whether the Commonwealth exercised due diligence. ***Commonwealth v. Selenski***, 606 Pa. 51, 59, 994 A.2d 1083, 1088 (2010); Pa.R.Crim.P. 600, Comment. "The

Commonwealth bears the burden of proving due diligence by a preponderance of the evidence." **Burno, supra**, at 314, 154 A.3d at 794.

> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth.

**Commonwealth v. Brown**, 875 A.2d 1128, 1138 (Pa.Super. 2005), *appeal denied*, 586 Pa. 734, 891 A.2d 729 (2005) (quoting **Hunt, supra** at 1241-42) (emphasis in original). "Due diligence includes, among other things, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600." **Commonwealth v. Ramos**, 936 A.3d 1097, 1102 (Pa.Super. 2007) (*en banc*), *appeal denied*, 597 Pa. 705, 948 A.2d 803 (2008) (citing **Hunt, supra** at 1242).

> Failure to provide mandatory discovery is not a *per se* basis for "excusable delay" of trial. Failure to provide mandatory discovery, without more, does not toll the running of the adjusted run date. Moreover, if the delay in providing discovery is due to either intentional or negligent acts, or merely stems from the prosecutor's inaction, the Commonwealth cannot claim that its default was "excusable."

**Commonwealth v. Preston**, 904 A.2d 1, 12 (Pa.Super. 2006) (*en banc*), *appeal denied*, 591 Pa. 663, 916 A.2d 632 (2007) (internal citations omitted).[4]

---

[4] Although the **Preston** Court applied Rule 1013, governing promptness of municipal court trials, the Court acknowledged Rules 1013 and 600 have

Where the court enters a continuance:

> If the defense does indicate approval or acceptance of the continuance, the time associated with the continuance is excludable under Rule 600 as a defense request. Significantly, when the defendant signs the Commonwealth's motion for postponement and registers no objection to the postponement…the signed consent without objection can be interpreted as consent to the new date….

*Hunt, supra* at 1241 (internal citations omitted). *See also Commonwealth v. Peterson*, 19 A.3d 1131, 1137 (Pa.Super. 2011) (*en banc*), *affirmed*, 615 Pa. 587, 44 A.3d 655 (2012) (stating: "A joint continuance is excludable"). "[T]ime attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." *Commonwealth v. Mills*, 640 Pa. 118, 122, 162 A.3d 323, 325 (2017). "[W]here a **trial-ready** prosecutor must wait…due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." *Id.* (emphasis added). It is "inconsistent with both the letter and spirt of Rule 600" to state "time during which no one is prepared for trial—or even possibly could be ready—is 'delay.'" *Id.*

Delay caused by a co-defendant does not constitute excludable time. *Commonwealth v. Hill*, 558 Pa. 238, 261-62, 736 A.2d 578, 590-91 (1999). Delay associated with a co-defendant may be excusable, however, if the Commonwealth acted with due diligence and the delay was beyond its control. *Id.* at 263, 736 A.2d at 591 (stating: "Even where a [speedy trial]

---

similar purposes; and case law interpreting the rules applies equally to both. *Preston, supra* at 9.

violation…has occurred, the motion to dismiss the charges should be denied if the Commonwealth exercised due diligence and…the circumstances occasioning the postponement were beyond the control of the Commonwealth") (internal quotation marks omitted).

Generally, "delays caused by pretrial motions constitute excludable time where the pretrial motion renders the defendant unavailable." *Hill, supra* at 250, 736 A.2d at 585.

> However, the mere filing of a pretrial motion by a defendant does not automatically render him unavailable. Rather, a defendant is only unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion. If a delay is created, in order to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion.

*Id.* at 254-55, 736 A.2d at 587 (internal citations and footnote omitted).

Instantly, the Commonwealth filed the complaint against Appellant and co-defendant on January 22, 2015. Therefore, the initial Rule 600 mechanical run date was January 22, 2016. On June 22, 2015, the original discovery due date, the court granted the Commonwealth an extension to pass discovery till July 28, 2018. On July 28, 2015, the court granted the Commonwealth's request for a continuance for additional time to pass discovery and set a new discovery date of July 30, 2015. The record indicates the Commonwealth was not ready to pass discovery on June 22, 2015, and July 28, 2015, and requested the July 28, 2015 continuance. Thus, the delay between June 22, 2015, and July 30, 2015, did not constitute excludable or excusable delay,

and the run date remained January 22, 2016. **See Hunt, supra**.

Due to the Pope's visit to Philadelphia in late September 2015, the court rescheduled trial from the original trial date of September 28, 2015, to December 14, 2015. While this rescheduling was beyond the Commonwealth's control, the record indicates the Commonwealth had still not passed discovery to Appellant in September 2015 and throughout this delay period, and the court made no finding of due diligence regarding the Commonwealth's efforts to comply with its discovery obligations. **See Selenski, supra**; **Preston, supra**; **Hunt, supra**. Thus, the record is unclear whether the 77-day delay from September 28, 2015, to December 14, 2015, constitutes excusable delay.

On August 21, 2015, the court rescheduled trial from December 14, 2015, to January 11, 2016, a 28-day delay. The court then rescheduled trial again on December 29, 2015, from January 11, 2016, to January 25, 2016, a 14-day delay. In both instances, the record is silent on why the court rescheduled trial and whether the Commonwealth was ready to proceed to trial during these periods. **See Mills, supra**; **Hunt, supra**. The record demonstrates, however, the Commonwealth had still not passed discovery to Appellant as of December 2015 and January 2016; and the trial court made no determination whether the Commonwealth had exercised due diligence in meeting its discovery obligations. **See Selenski, supra**; **Preston, supra**. Thus, we cannot say whether the 42-day delay from December 14, 2015, to

January 25, 2016, constitutes excusable delay.

Co-defendant's counsel was on trial in an unrelated matter and unable to proceed to trial on January 25, 2016, and the Commonwealth refused to sever Appellant's case. As a result, the court rescheduled trial from January 25, 2016, to May 23, 2016. This 118-day delay stems from co-defendant's unavailability. *See Hill, supra*. The record also indicates the Commonwealth had still not passed discovery to Appellant during this period; and the court made no due diligence determination with regard to the Commonwealth's failure to provide discovery. *See Selenski, supra*; *Preston, supra*. Additionally, the record fails to show whether the Commonwealth was ready to proceed to trial on January 25, 2016. *See Mills, supra*; *Hunt, supra*. Thus, we cannot tell whether the 118-day delay from January 25, 2016, to May 23, 2016, constitutes excusable delay.

On May 23, 2016, a rescheduled trial date, Appellant filed his first Rule 600 motion. That same day, the court was presiding over a trial in an unrelated matter, so the court set the next court date for May 24, 2016. On May 24, 2016, the court remained on trial, and listed May 25, 2016, as the next court date. While the two-day delay from May 23, 2016, to May 25, 2016, was beyond the Commonwealth's control, the record shows the Commonwealth had still not turned discovery over to Appellant on both dates, and the court made no finding regarding the Commonwealth's due diligence. *See Selenski, supra*; *Preston, supra*; *Hunt, supra.* Thus, we cannot say

whether the 2-day delay from May 23, 2016, to May 25, 2016, constitutes excusable delay.

On May 25, 2016, the court remained on another trial and scheduled a hearing on Appellant's Rule 600 motion for June 2, 2016. Also on May 25, 2016, the record indicates the Commonwealth passed "audio discovery" to Appellant. Following a Rule 600 hearing on June 2, 2016, the court held Appellant's motion under advisement until June 22, 2016, when it denied Appellant relief and rescheduled trial for November 28, 2016. The record does not illustrate: (i) if the Commonwealth was ready for trial on May 25, 2016, June 2, 2016, or June 22, 2016; and (ii) why the court rescheduled trial for November 28, 2016, more than 5 months later. *See Mills, supra*. Additionally, while the 187-day delay from May 25, 2016, to November 28, 2016, was beyond the Commonwealth's control and/or caused by Appellant's Rule 600 motion, whether the Commonwealth fully satisfied its discovery obligation on May 25, 2016, remained an open issue. *See Preston, supra*. Rather, it appears the Commonwealth had not turned over all discovery in May 2016, in light of Appellant's second Rule 600 motion on November 28, 2016, when the Commonwealth passed to Appellant 15 allegedly new documents. *See id.* Further, the court failed to determine whether the Commonwealth exercised due diligence in its efforts to provide Appellant discovery. *See Selenski, supra*; *Hunt, supra*. Therefore, we cannot tell if the 187 days between May 25, 2016, and November 28, 2016, amounts to

excusable delay.

The following chart summarizes the delays prior to trial:

| DATES | ACTIVITY | DAYS DELAY | EXCLUDABLE OR EXCUSABLE | ADJUSTED RUN DATE |
|---|---|---|---|---|
| 6/22/15-7/28/15 | Commonwealth not ready to pass discovery; court relisted discovery date for 7/28/15 | 36 | No; Commonwealth not ready | 1/22/16 |
| 7/28/15-7/30/15 | Commonwealth requested continuance to pass discovery; court granted continuance till 7/30/15 | 2 | No; Commonwealth requested continuance to pass discovery | 1/22/16 |
| 9/28/15-12/14/15 | Court rescheduled trial on 7/30/15 in light of Pope's visit to Philadelphia in late September 2015; record indicates Commonwealth had still not passed discovery | 77 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **4/8/16?** |
| 12/14/15-1/11/16 | Court rescheduled trial on 8/21/15; record silent as to reason for rescheduling; record indicates Commonwealth had yet to pass discovery | 28 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **5/6/16?** |
| 1/11/16-1/25/16 | Court rescheduled trial on 12/29/15; record silent as to reason for rescheduling; record indicates Commonwealth still had not passed discovery | 14 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **5/20/16?** |
| 1/25/16-5/23/16 | Co-defendant's counsel unavailable for trial; Commonwealth refused to sever; court rescheduled trial for 5/23/16; record indicates Commonwealth still had not passed discovery | 118 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **9/15/16?** |

| 5/23/16-5/24/16 | Court was on another trial and set next court date for 5/24/16; record indicates Commonwealth still had not passed discovery | 1 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **9/16/16?** |
|---|---|---|---|---|
| 5/24/16-5/25/16 | Court was on another trial and set next court date for 5/25/16; record indicates Commonwealth still had not passed discovery | 1 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **9/17/16?** |
| 5/25/16-6/2/16 | Court was on another trial and set hearing on Appellant's 1st Rule 600 motion for 6/2/16; Commonwealth passed "audio discovery" | 8 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **9/25/16?** |
| 6/2/16-6/22/16 | Court held Appellant's Rule 600 motion under advisement, following 6/2/16 hearing | 20 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **10/15/16?** |
| 6/22/16-11/28/16 | Court rescheduled trial upon disposition of Appellant's 1st Rule 600 motion; Commonwealth passed allegedly new discovery on day trial began, 11/28/16 | 159 | **Excusable?**; court made no due diligence determination; no indication of Commonwealth's trial readiness | **3/23/17?** |

Based upon the foregoing, we are unable to calculate the adjusted run date for Appellant's trial. Despite viewing the facts of record in a light most favorable to the Commonwealth, the record is inconsistent, at best, and the trial court failed to account for the cause of several continuances or if the

Commonwealth was: (i) duly diligent in preparing the case for trial, including in its efforts to procure and pass discovery to Appellant; and (ii) ready for trial before the court continued trial. The trial court conducted no due diligence analysis with respect to whether the Commonwealth had met its discovery obligations throughout the case. Additionally, the record does not show if and when the Commonwealth was ready for trial until November 28, 2016, when trial began. Accordingly, we remand the case for the trial court to conduct a hearing to clarify the record on: (1) the cause for all continuances; (2) if and when the Commonwealth was ready to proceed to trial; and (3) whether the Commonwealth exercised due diligence bringing Appellant to trial. ***See Selenski, supra*** (stating proper action for Superior Court was to remand for trial court to determine whether Commonwealth exercised due diligence pursuant to Rule 600, where trial court failed to conduct proper due diligence analysis in first instance). Upon remand, and contrary to what the court stated several times on the record, the Commonwealth bears the burden to establish due diligence throughout the case, *e.g.*, it was prepared for trial, it kept adequate records to ensure compliance with Rule 600, and its failure to provide discovery did not stem from intentional or negligent conduct or inactivity. ***See Burno, supra***; ***Ramos, supra***; ***Preston, supra***.

In his second and remaining issue, Appellant argues he did not enter the burglarized residence but was merely present outside the residence when other individuals conducted the home invasion robbery. Appellant submits

the trial evidence showed only that he was in the backseat of the getaway car, stepped out briefly to stretch his legs, and returned to the car while the burglary occurred. Appellant submits the evidence did not show he communicated with the perpetrators in furtherance of a conspiracy to burglarize the residence. Appellant contends the evidence was insufficient to demonstrate he participated in the home invasion robbery or conspired to burglarize the residence. Appellant concludes this Court should vacate his convictions, or, alternatively, remand for a new trial. We disagree on these grounds.

A challenge to the sufficiency of the evidence implicates the following legal principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

*Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Crimes Code defines robbery, in relevant part, as follows:

**§ 3701. Robbery**

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

\* \* \*

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii). ***See also Commonwealth v. Robinson***, 936

A.2d 107 (Pa.Super. 2007), *appeal denied*, 597 Pa. 705, 948 A.2d 804 (2008)

(stating crime of robbery does not require completion of predicate offense of

theft); ***Commonwealth v. Everett***, 443 A.2d 1142 (Pa.Super. 1982)

(holding defendant's robbery conviction was supported by sufficient evidence

where defendant aided and abetted cohort in robbery, even though defendant

himself did not carry weapon, employ threats, or cause personal injury).

The Crimes Code defines burglary in relevant part as follows:

**§ 3502. Burglary**

**(a) Offense defined.—**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the

time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(1). "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

The Crimes Code defines conspiracy, in part, as follows:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

**(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

\* \* \*

18 Pa.C.S.A. § 903(a), (e). To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: (i) entered into an agreement to commit or aid in an unlawful act with another person or persons; (ii) with a shared criminal intent; and (iii) an overt act was done in furtherance of the conspiracy. *Jones, supra* at 121. Additionally:

> **Circumstantial evidence may provide proof of the conspiracy.** The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.
>
> *     *     *
>
> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* at 121-22 (internal citations and quotation marks omitted) (emphasis added). Nevertheless, circumstances such as an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant to prove a conspiracy, when "viewed in conjunction with each other and in the context in which they occurred." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa.Super. 2002) (*en banc*), *appeal denied*, 569 Pa. 701, 805 A.2d 521 (2002).

Instantly, in its opinion, the trial court examined the trial evidence as follows:

> The Commonwealth established that…Appellant, as a co-conspirator, was jointly and severally liable for robbery. The evidence showed that at least one of several co-defendants used a weapon to hold…[V]ictims hostage while taking their cellular phones and looking for cash and other items inside [Victim 2]'s apartment. [Victim 3], who was struck in the back of the head during the crime spree, required medical attention. Although…Appellant was outside of the

- 35 -

apartment during the robbery, he was in [co-defendant]'s vehicle acting as a "lookout." The trial surveillance video showed…Appellant extend his head out of the rear driver-side door and look southbound on 7th Street. This video also showed…Appellant exit the vehicle to walk around the corner onto Tree Street before returning to the car. When the home invaders exited the apartment with one of the [V]ictims, …Appellant stepped out of the car as a "lookout" before getting back in the vehicle. Finally, once the intruders returned to the Infiniti, [co-defendant] drove his co-conspirators down 7th Street. Although it was not established that…Appellant was inside the apartment, the jury still believed that he was a conspirator to the robbery. …

\*     \*     \*

[T]he evidence supports that…Appellant conspired with [co-defendant] and others to burglarize, rob, and assault…[V]ictims. Their intentions and conduct were clear. [A]ppellant was recorded casing the area of the home invasion and acting as a "lookout" for the home invaders before fleeing the scene with the perpetrators. …

\*     \*     \*

[A]ppellant was a co-conspirator to a burglary. [A]ppellant and other perpetrators waited for [V]ictims to arrive at [Victim 2]'s residence. When [Victim 1] arrived, the perpetrators forced him to take them to the apartment where…[V]ictims were robbed. When the perpetrators forced their way into the apartment, [Victim 2] and his guests were inside the premises. The perpetrators then held [Victim 1], [Victim 2], [Victim 3], and other visitors at gun point before taking their cash and cell phones. They later hit [Victim 3] in the head, dragged him outside, and stole his car keys.

(Trial Court Opinion at 17-19). Viewed in the light most favorable to the

Commonwealth, the trial evidence was sufficient to support Appellant's

convictions for robbery, burglary, conspiracy to commit robbery, and

conspiracy to commit burglary. **See Jones, supra**. Thus, Appellant's second and remaining appellate issue merits no relief.[5]

Accordingly, the cleanest resolution of this case is to vacate the February 3, 2017 judgment of sentence as well as the February 17, 2017 amended judgment of sentence and remand for a new hearing on the Commonwealth's Rule 600 due diligence throughout its prosecution of this case. Depending on the outcome of that Rule 600 hearing, the Commonwealth shall have the opportunity to move to modify the restitution amount in compliance with Section 1106(c)(3); and the court can resentence Appellant.

Judgment of sentence and amended judgment of sentence vacated; case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/16/19

---

[5] The trial court mistakenly addressed Appellant's issue as a challenge to the weight of the evidence. In his Rule 1925(b) statement and brief on appeal, Appellant raised a sufficiency of the evidence claim, not a weight issue.